IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DALTON HASTEY, *derivatively on behalf of YRC Worldwide, Inc.*,

        Plaintiff,

v.

JAMES L. WELCH, et al.,

        Defendants,

        and

YRC Worldwide Inc.,

        Nominal Defendant.

Case No. 19-2266-DDC-KGG

## MEMORANDUM AND ORDER

Plaintiff Dalton Hastey has filed this action, derivatively and on behalf of nominal defendant YRC Worldwide Inc. ("YRC"), against defendants James L. Welch, Jamie G. Pierson, Darren D. Hawkins, Stephanie D. Fisher, Raymond J. Bromark, Douglas A. Carty, William R. Davidson, Matthew A. Doheny, Robert L. Friedman, James E. Hoffman, Michael J. Kneeland, Patricia M. Nazemetz, and James M. Winestock (collectively, the "Individual Defendants," and together with YRC, the "defendants").

This matter comes before the court on seven pending motions: (1) YRC's Motion to Stay (Doc. 37); (2) defendants' Request for Judicial Notice (Doc. 39); (3) plaintiff's Cross-Motion to Stay (Doc. 49); (4) defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 52); (5) plaintiff's Request for Judicial Notice (Doc. 57); (6) Stockholder Ameesh Bhandari's Motion to Intervene (Doc. 67); and (7) Stockholders Shawn Miller and Jeremy Baldwin's Motion for

Permissive Intervention (Doc. 70).  The parties have fully briefed these matters and the court is prepared to rule.  For reasons explained below, the court grants both parties' requests for judicial notice (Docs. 39 & 57).  Next, the court grants defendants' Motion to Dismiss (Doc. 52).  Because the court grants this motion, it need not consider whether to stay the case.  YRC's Motion to Stay (Doc. 37) and plaintiff's Cross-Motion to Stay (Doc. 49) thus are denied as moot.  Finally, the court denies as moot the stockholders' Motions to Intervene (Docs. 67 & 70).

## I.    Background

### A.  Factual Background

The following facts come from plaintiff's Amended Complaint and the court views them in the light most favorable to him.  *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotations marks omitted)).  The court briefly summarizes the nature of the action, below.

Plaintiff is a shareholder of YRC common stock.  Doc. 50 at 9 (Am. Compl. ¶ 30).  He brings this shareholder derivative action seeking to remedy wrongdoing committed by YRC's directors and officers.  *Id.* at 2 (Am. Compl. ¶ 1).  YRC is a holding company that, through its subsidiaries, provides shipping services.  *Id.* (Am Compl. ¶ 2).  YRC focuses on less-than-truckload ("LTL") shipping, which combines shipments from multiple customers on a single trailer.  *Id.* (Am. Compl. ¶ 3).  YRC's largest subsidiary is YRC, Inc. ("YRC Freight").[1]  *Id.* at 2–3 (Am. Compl. ¶ 3).  YRC Freight provides LTL and truckload services for transporting industrial, commercial, and retail goods in national, regional, and international markets through

---

[1]    YRC Freight is the LTL entity resulting from a 2009 merger between Yellow Transportation, Inc. and Roadway Express, Inc.  Doc. 50 at 2–3 (Am. Compl. ¶ 3).

its North American ground distribution network.  *Id.* at 3 (Am. Compl. ¶ 3).  YRC Freight employs some 19,000 individuals and owns 126 service facilities—where shipments are weighed and processed for delivery—throughout North America.  *Id.*  YRC determines shipment pricing based primarily on shipment weight, general classification of the product, shipping destination, and customer discounts.  *Id.*  Since at least September 2005, YRC has overcharged its customers for shipments that were lighter—and therefore less expensive—than the weights for which they were charged.  *Id.* at 4 (Am. Compl. ¶ 7).  Specifically, when employees reweighed a shipment that was lighter than the weight stated on the shipment's invoice, they never corrected the weight, and charged the customer for the incorrect, heavier weight (the "Reweighing Misconduct").  *Id.*  This scheme has generated YRC at least $2 million per month since September 2005, causing its financial statements to include overstated revenue and unstated losses.  *Id.*

A significant portion of YRC's business came from the United States Department of Defense (the "DOD").  *Id.* at 3 (Am. Compl. ¶ 4).  In November 2008, James Hannum, an employee, filed a whistleblower action under seal.  *Id.* at 5 (Am. Compl. ¶ 9); *see* Complaint, *United States ex rel. Hannum v. YRC Freight, Inc.*, No. 08-cv-0811-RJA-MJR (W.D.N.Y. Nov. 3, 2018), ECF No. 1 (the "DOD Action").  The complaint alleged that YRC systematically overcharged its customers, including the DOD, for shipping.  *Id.*  Around 2009, the Department of Justice ("DOJ") began investigating YRC for the Reweighing Misconduct (the "DOJ Investigation").  *Id.* (Am. Compl. ¶ 10).  On December 14, 2018, the DOJ issued a press release announcing that the United States had filed a complaint in intervention in the DOD Action.  *Id.* at 6 (Am. Compl. ¶ 14).  This shareholder derivative suit arises from the alleged Reweighing Misconduct and disclosure issues over that misconduct.

## B. Procedural Background

Plaintiff filed his Complaint (Doc. 1) on May 29, 2019. On August 16, 2019, YRC filed a Motion to Stay (Doc. 37). YRC's motion asks the court to stay the case if any of plaintiff's claims survived YRC's three then-pending motions to dismiss (Docs. 31, 33, & 35).[2] Doc. 38 at 2–3. Plaintiff filed a Cross-Motion to Stay (Doc. 49). Plaintiff's motion asks that the court immediately stay the case, pending the resolution of a related securities class action. Doc. 49 at 3. On October 15, 2019, plaintiff filed an Amended Complaint (Doc. 50). Defendants filed a Motion to Dismiss (Doc. 52).

On January 8, 2020, plaintiff filed a "Notice of Supplemental Authority" (Doc. 61). This notice informed the court that on the same day plaintiff filed his Cross-Motion to Stay—the one seeking an immediate stay of the case—a litigant filed a shareholder derivative action in Delaware federal court on behalf of YRC against the same defendants named in this suit. Doc. 61 at 1. Plaintiff's notice asks the court, because of this Delaware lawsuit, to rule defendants' Motion to Dismiss, "without staying proceedings either before or after so ruling." *Id.* In other words, plaintiff—contrary to the position he took in his Cross-Motion to Stay (Doc. 49)—no longer seeks a stay of the case. YRC seeks to stay the case only if any claims remain viable after the court rules the motion to dismiss. Since the court grants defendants' Motion to Dismiss (Doc. 52), it denies as moot the parties' Motions to Stay (Docs. 37 & 49).

On March 4, 2020, YRC stockholder Ameesh Bhandari filed a Motion to Intervene (Doc. 67). On March 6, 2020, stockholders Shawn Miller and Jeremy Baldwin filed their own Motion to Intervene (Doc. 70), expressing concerns similar to Mr. Bhandari's. The putative intervenors are concerned that, if the court dismisses plaintiff's Amended Complaint for failure to make a

---

[2]     When plaintiff filed an Amended Complaint (Doc. 50), the court denied as moot YRC's Motions to Dismiss the first complaint (Docs. 31, 33, & 35). *See* Doc. 55.

pre-suit demand on YRC's Board of Directors under Fed. R. Civ. P. 23.1, they will be collaterally estopped from bringing their own shareholder derivative suits in the Delaware Court of Chancery. For reasons explained below, the court denies these motions.

The court's analysis begins with the two Requests for Judicial Notice (Docs. 39 & 57). The court then addresses defendants' Motion to Dismiss (Doc. 52). Finally, the court considers the Motions to Intervene (Docs. 67 & 70).

## II.   Requests for Judicial Notice

The parties each have requested that the court take judicial notice of various documents. The court first sets out the legal standard for judicial notice. It then addresses each request, in turn, below.

### A.  Legal Standard

A federal court may take judicial notice of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court must take judicial notice if a party requests it and supplies the court with the necessary information. Fed. R. Evid. 201(c)(2). When ruling a motion to dismiss, a court may consider facts subject to judicial notice without converting the motion to dismiss into a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

### B.  Defendants' Request for Judicial Notice (Doc. 39)

Defendants have submitted a Joint Request for Judicial Notice (Doc. 39). Defendants request that the court take judicial notice of 14 exhibits submitted with an affidavit from Ann M. Ashton (the "Ashton Declaration") (Doc. 41). The Ashton Declaration testifies that these

documents are true and correct copies of each exhibit. Doc. 41 at 2 (Ashton Decl. ¶ 4). For reasons explained below, the court grants defendants' motion and takes judicial notice of all 14 exhibits attached to her affidavit.

### 1. Governing Corporate Documents and SEC Filings

Defendants assert that Exhibits 1, 2, and 9 (Docs. 41-1, 41-2 & 41-9) are YRC's corporate governing documents, filed as part of submissions to the United States Securities Exchange Commission (the "SEC"). Doc. 40 at 3. They assert that Exhibits 3, 4, 5, 6, 8, and 10 (Docs. 41-3, 41-4, 41-5, 41-6, 41-8, & 41-10) also are SEC filings. *Id.* Defendants assert that the court may take judicial notice of these documents because they are matters of public record not subject to reasonable dispute. The court agrees. *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) (holding that contents of an administrative agency's publicly available files qualify for judicial notice); *see also Tal*, 453 F.3d at 1264 n.24 (holding that court may take judicial notice of facts which are a matter of public record); *Jordan v. Sprint Nextel Corp.*, 3 F. Supp. 3d 917, 930 n.43 (D. Kan. 2014) (holding that court "may take judicial notice of SEC's filings because they are a matter of public record."). The court thus takes judicial notice of these 14 exhibits.

### 2. Related Court Proceedings

Next, defendants assert, the court should take judicial notice of Exhibits 11, 12, and 13 (Docs. 41-11, 41-12, & 41-13). Defendants assert that these exhibits are copies of filings made in related court proceedings, and that the court may take judicial notice under Fed. R. Evid. 201(b)(2). Doc. 40 at 4. The court agrees that it may take judicial notice of these filings. *CA 79-3511 St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Co.*, 605 F.2d 1169, 1172 (10th Cir.

1979) (holding that federal courts may take notice of proceedings in other courts if those proceedings have a direct relation to matters at issue in the current case).

### 3. YRC Press Release

Finally, defendants assert that the court should take judicial notice of Exhibit 14 (Doc. 41-14) because it is a matter of public record available on YRC's website. The court agrees. It may take judicial notice of this press release because it is a matter of public record not subject to reasonable dispute. Fed. R. Evid. 201(b)(2); *see also In re Zagg Inc. S'holder Deriv. Action*, No. 2:12CV1188, 2014 WL 5089939, at *1 (D. Utah Oct. 9, 2014) (taking judicial notice of press releases).

### C. Plaintiff's Request for Judicial Notice (Doc. 57)

Plaintiff's request for judicial notice asks the court to take judicial notice of Exhibits 1 through 3, filed in support of its Opposition to defendants' Motion to Dismiss. Plaintiff asserts that Exhibits 1 and 2 (Docs. 59-1 & 59-2) are copies of YRC's current and historical governing documents. Doc. 58 at 2. He asserts that Exhibit 3 (Doc. 59-3) is a copy of a quarterly report filed with the SEC on Form 10-Q by Paypal Holdings, Inc. *Id.* Plaintiff asserts that all three documents were filed with the SEC. *Id.* The court agrees that these documents are appropriate for judicial notice. All three are matters of public record not subject to reasonable dispute. Fed. R. Evid. 201(b)(2); *see also Winzler*, 681 F.3d at 1213 (holding that the contents of an agency's publicly available files qualify for judicial notice); *Tal*, 453 F.3d at 1264 n.24 (holding that court may take judicial notice of facts which are a matter of public record); *Jordan*, 3 F. Supp. 3d at 930 n.43 (holding that court "may take judicial notice of the SEC's filings because they are a matter of public record."). The court thus grants plaintiff's motion (Doc. 57).

**III.     Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 52)**

The Amended Complaint alleges that the Individual Defendants have (1) violated Section 14(a) of the Exchange Act, (2) breached their fiduciary duties, (3) been unjustly enriched, and (4) wasted corporate assets.  Doc. 50 at 129–35 (¶¶ 475–507).  Defendants argue that the court should dismiss plaintiff's state law claims for fiduciary breach, unjust enrichment, and waste of corporate assets (the "state law claims") on *forum non conveniens* grounds.  Doc. 52 at 1.  Next, defendants assert, the court should dismiss plaintiff's Section 14(a) claim—and any remaining state law claims—under Fed. R. Civ. P. 23.1 because plaintiff has failed to make a pre-suit demand on YRC's Board of Directors.[3]  *Id.* at 1–2.  And, if any claims survive these two challenges, defendants assert, the court should dismiss them under Fed. R. Civ. P. 12(b)(6).  *Id.* at 2.  Plaintiff tacitly acknowledges that a forum selection provision in YRC's bylaws governs his state law claims.  Doc. 60 at 18–19; *see* Doc. 41-2 at 24–25.  But, he asserts, the Amended Complaint brings a federal law claim under Section 14(a) of the Exchange Act.  Doc. 60 at 18–19.  Plaintiff thus requests that the court exercise supplemental jurisdiction over his state law claims and disregard the forum selection provision.  *Id.* at 19–21.

The court first addresses plaintiff's Section 14(a) claim.[4]  For reasons explained below, the court concludes that plaintiff has failed to state a claim for which the court can grant relief.

---

[3]     Fed. R. Civ. P. 23.1 "applies when one or more shareholders or members of a corporation . . . bring a derivative action to enforce a right that the corporation . . . may properly assert but has failed to enforce."  This Rule requires a derivative action complaint to state "with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders . . . and (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).

[4]     Defendants asked the court to dismiss plaintiff's state law claims on *forum non conveniens* grounds, and then consider Fed. R. Civ. P. 23.1 before reaching the Fed. R. Civ. P. 12(b)(6) issue.  But, finding that it will promote the interest of judicial economy, the court first addresses whether plaintiff has stated a claim under Fed. R. Civ. P. 12(b)(6) on his sole federal law claim.  Since plaintiff doesn't state a claim for which the court can grant relief, the court declines to address the *forum non conveniens* or Rule 23.1 issues.

Since the court dismisses plaintiff's sole federal law claim, it declines to exercise supplemental jurisdiction over his state law claims. The court thus dismisses plaintiff's case.

## A. Section 14(a) Claim

The Amended Complaint alleges a claim against the Individual Defendants for violating Section 14(a) of the Exchange Act. Doc. 50 at 129–31 (Am. Compl. ¶¶ 475–85). Section 14(a) of the Exchange Act provides:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

15 U.S.C. § 78n.(a)(1). Rule 14a-9, promulgated under Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9 (2011).

The Amended Complaint alleges the following facts to support plaintiff's Section 14(a) claim, and the court views them in the light most favorable to him. *Shields*, 744 F.3d at 640. YRC's 2014 through 2018 proxy statements—under the "direction and watch" of YRC's directors—failed to disclose that (1) YRC was engaging in the Reweighing Misconduct, (2) YRC had overstated its operating revenue and income and understated its net losses because of the Reweighing Misconduct, (3) the Reweighing Misconduct would subject YRC to "enhanced scrutiny" from the government and potential liability, (4) the DOJ already was investigating

YRC's Reweighing Misconduct, and (5) YRC had failed to maintain internal controls.  Doc. 50 at 130 (Am. Compl. ¶ 479).

The Individual Defendants, plaintiff alleges, also caused the proxy statements to contain false and misleading statements about executive compensation.  *Id.* (Am. Compl. ¶ 480).  Specifically, the proxy statements "purported to employ pay-for-performance elements, while failing to disclose that [YRC's] share price was artificially inflated . . . ."  *Id.*  The misrepresentations and omissions were material to plaintiff in voting on matters set forth for shareholder determination in the proxy statements, including election of directors, ratification of an independent auditor, and approval of executive compensation.  *Id.*  And, the false and misleading proxy statements led to re-election of Individual Defendants Welch, Pierson, Fisher, Bromark, Carty, Davidson, Doheny, Friedman, Hoffman, Kneeland, Nazemetz, and Winestock, which permitted them to continue breaching their fiduciary duties to YRC.  *Id.* at 131 (Am. Compl. ¶ 483).

### 1. Plaintiff's Section 14(a) Claims Based on the 2014, 2015, and 2016 Proxy Statements are Time-Barred.

The Amended Complaint alleges that the Individual Defendants have violated Section 14(a) of the Exchange Act by causing or allowing false and misleading proxy statements for the years 2014 through 2018.  Doc. 50 at 130 (Am. Compl. ¶¶ 479–81).  Defendants assert that these claims are time-barred.  Doc. 53 at 47–48.

The limitations period for Section 14(a) claims is "'one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation.'"  *Alaska Elec. Pension Fund v. Olofson*, No. 08-2344-CM, 2009 WL 1580296, at *4 (D. Kan. June 3, 2009) (quoting *In re iBasis, Inc. Derivative Litig.*, 532 F. Supp. 2d 214, 220 (D. Mass. 2007)); *accord Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993).  "The one-year

limitations period functions as a statute of limitations and the three-year limitations period functions as a statute of repose." *iBasis*, 532 F. Supp. 2d at 220. Because "'the purpose of the three-year limitation is clearly to serve as a cutoff, . . . tolling principles do not apply to that period.'" *Id.* (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). And, courts have held, "the statute of repose begins on each claim when the violation occurs." *Alaska Elec.*, 2009 WL 1580296, at *4 (citing *iBasis*, 532 F. Supp. 2d at 221) (further citations omitted); *see also Stoll v. Ardizzone*, No. 07 Civ. 00608(CM), 2007 WL 2982250, at *2 (S.D.N.Y. Oct. 9, 2007) (holding that a plaintiff must bring a Section 14(a) claim "no later than three years after each proxy was issued—regardless of when a plaintiff actually discovers the harm suffered").

Plaintiff filed his original Complaint on May 29, 2019. Doc. 1. The Complaint based its Section 14(a) claims on YRC's proxy statements for the years 2014 through 2018. YRC issued the 2016 proxy statement on March 17, 2016. Doc. 50 at 82 (Am. Compl. ¶ 295). Defendants assert that the three-year limitations period bars plaintiff's Section 14(a) claims based on the 2014, 2015, and 2016 proxy statements because YRC issued all three of those proxy statements more than three years before plaintiff filed his Complaint. Doc. 53 at 48. Plaintiff concedes that the three-year limitation is an "absolute bar" to recovery. Doc. 60 at 54. Finding no genuine dispute over the timeliness of claims, the court holds that the three-year limitations period bars plaintiff's Section 14(a) claims based on the 2014, 2015, and 2016 proxy statements.

Also, defendants assert that the one-year statute of limitations bars plaintiff's Section 14(a) claims relying on the 2017 and 2018 proxy statements. Doc. 53 at 47–48. YRC issued its 2017 proxy statement on March 21, 2017. Doc. 50 at 91 (Am. Compl. ¶ 339). It issued its 2018 proxy statement on March 19, 2018. *Id.* at 101 (Am. Compl. ¶ 385). Plaintiff agrees with

defendants that a one-year statute of limitations governs his Section 14(a) claim. Doc. 60 at 54. But, he asserts, the one-year statute of limitations is subject to equitable tolling. *Id.* (citing *Young v. United States*, 535 U.S. 43, 49 (2002) (holding that limitations periods customarily are subject to equitable tolling, unless it would be inconsistent with the relevant statute)). Plaintiff asserts that he has pleaded facts that toll the limitations period. *Id.* He asserts that "a reasonable stockholder had no way of knowing [YRC] was under an ongoing DOJ fraud investigation, let alone the facts of the Reweighing Misconduct." *Id.*

Plaintiff has the better of this issue. Equitable tolling applies to the one-year statute of limitations. "In securities law cases, the statute of limitations begins to run when the plaintiff is put on 'inquiry notice'—that is, when a reasonable investor should have been on notice of a potential violation of the securities laws." *Britton v. Parker*, No. 06-cv-01797-MSK-KLM, 06-cv-01922, 06-cv-02017, 2008 WL 4533727, at *11 (D. Colo. Sept. 5, 2008), *report and recommendation rejected on other grounds*, No. 06-cv-01797-MSK-KLM, 06-cv-1922-MSK-KLM, 06-cv-02017-MSK-KLM, 2008 WL 4533716 (D. Colo. Sept. 29, 2008) (quoting *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1196 (10th Cir. 1998)).

Plaintiff never explains which allegations in the Amended Complaint support his assertion that he has pleaded facts that toll the limitations period. But, viewing the facts in the light most favorable to plaintiff, the court concludes that a reasonable shareholder would have learned of a potential violation of securities laws when the DOJ announced that the United States had filed a complaint in intervention against three of YRC's subsidiaries. Doc. 50 at 6 (Am. Compl. ¶ 14); Doc. 50-2. The Amended Complaint alleges that the press release informed the public—including shareholders—that "'these companies systematically overcharged [the Department of Defense] for freight carrier services and made false statements to the government

that hid their misconduct.'" Doc. 50 at 6 (Am. Compl. ¶ 14). The Amended Complaint alleges

that the DOJ issued this press release on December 14, 2018. *Id.* Plaintiff filed his complaint on

May 29, 2019, less than a year later. The court thus concludes that plaintiff adequately has

pleaded facts that tolled the one-year statute of limitations period until DOJ announced the

complaint in intervention against three YRC subsidiaries in December 2018.

In sum, the three-year limitations period bars plaintiff's Section 14(a) claims based on the

2014, 2015, and 2016 proxy statements. Plaintiff may rely only on the 2017 and 2018 proxy

statements to support his Section 14(a) claims. The court also holds, on the current record,

plaintiff has met the one-year statute of limitations. These conclusions mean the court's analysis

must continue beyond defendants' time-based arguments. So, the court next considers whether

plaintiff has stated a claim—based on the 2017 and 2018 proxy statements—for which the court

can grant relief under Fed. R. Civ. P. 12(b)(6).

> **2. The Amended Complaint Fails to State a Plausible Section 14(a) Claim Because it Never Alleges a Sufficient Link Between the Proxy Statement and the Transaction at Issue.**

To establish a violation of Section 14(a), plaintiff must satisfy three elements: "(1) that

the proxy contained a material misrepresentation or omission; (2) that the defendant was at least

negligent[;] and (3) that the proxy 'was the essential link in completing the transaction in

question.'" *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1151 (D. Kan.

2001) (quoting *Wilson v. Great Am. Indus., Inc.*, 661 F. Supp. 1555, 1562 (N.D.N.Y. 1987),

*rev'd on other grounds*, 855 F.2d 987 (2d Cir. 1988)). Here, the court considers whether

plaintiff properly has pleaded facts that, if proved true, plausibly could support a finding on the

third element, *i.e.*, whether plaintiff has pleaded an "essential link" between the 2017 or 2018

proxy statements and the alleged misconduct. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375,

385 (1970) (holding that "shareholder has made a sufficient showing of causal relationship between the violation [of Section 14(a)] and the injury for which he seeks redress if . . . he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction").

Defendants assert that the Amended Complaint fails to allege this essential link. Doc. 53 at 49. Defendants assert that plaintiff's alleged injury stems from his allegations about the Reweighing Misconduct and related disclosure issues. *Id.* And, defendants assert, the Amended Complaint never alleges that the proxy statements called for shareholder authorization of this alleged misconduct. *Id.* at 50. Indeed, the 2017 and 2018 proxy statements sought a shareholder vote on just four actions: (1) re-election of Board members, (2) ratification of YRC's independent auditor, (3) a vote on executive compensation, and (4) a vote to recommend frequency of stockholder votes to approve executive compensation. *See* Doc. 50 at 130–31 (Am. Compl. ¶ 482). Defendants argue that because the 2017 and 2018 proxy statements never called for shareholder authorization of the misconduct alleged by the Amended Complaint, plaintiff hasn't alleged—and indeed can't allege—the required link between the proxy statements and the alleged misconduct. The court agrees with defendants and explains why in subsections a, b, and c.

In brief, plaintiff has failed to plead a link between the proxy statements and the alleged misconduct. First, soliciting a vote to re-elect the directors fails to create the essential link plaintiff must plead to state a claim under Section 14(a). Second, solicitation of advisory votes also fails to plead an essential link. Advisory votes do not authorize any corporate action. Third, ratifying YRC's independent auditor fails to provide an essential link between the proxy statements and the alleged misconduct. The court addresses each point, in turn, below:

### a. Solicitation of Votes to Re-Elect Directors Does Not Create Essential Link.

The 2017 and 2018 proxy statements both called for shareholder votes on re-election of members of YRC's Board of Directors.  Doc. 41-4 at 4; Doc. 41-5 at 4.  The Amended Complaint alleges that the false and misleading elements of the proxy statements led to the re-election of YRC's directors, "which allowed them to continue breaching their fiduciary duties to YRC."  Doc. 50 at 131 (Am. Compl. ¶ 483).

But this allegation can't suffice to state a claim for the wrongdoing asserted in the Amended Complaint.  "Courts have held Section 14(a) claims to be insufficient where the only basis for alleging causation is an assertion that the injury would not have occurred absent the election of the Board pursuant to the proxy statement."  *Alaska Elec. Pension Fund*, 2009 WL 1580296, at *8; *see also Hulliung v. Bolen*, 548 F. Supp. 2d 336, 341 (N.D. Tex. 2008) (concluding that allegations that proxies misled shareholders into electing shareholders who took allegedly improper actions insufficient to state a Section 14(a) claim).  The requisite link doesn't exist even where the elected directors later mismanaged the company.  *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) (holding that "the mere fact that omissions in proxy materials, by permitting directors to win re-election, *indirectly* lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss").  Courts in various circuits "have held that a Section 14(a) claim requires that the votes solicited by a false proxy statement directly authorize the loss-generating corporate action."  *In re Paypal Holdings, Inc. S'holder Derivative Litig.*, No. 17-cv-00162-RS, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018) (citation omitted).  "A complaint alleging generally that the mere election of directors was an essential link to the directors' subsequent wrongdoing does not satisfy Section 14(a)'s requirements."  *Id.*  "[D]amages are recoverable under Section 14(a) only when the votes for a

specific corporate transaction requiring shareholder authorization . . . are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought." *Gen. Elec. Co.*, 980 F.2d at 933.

Plaintiff responds, asserting that the Amended Complaint sufficiently alleges the essential causal link. Doc. 60 at 51. Plaintiff first relies on *General Electric* for support. In that case, a shareholder filed a derivative suit seeking both damages and equitable relief against a company's directors. 980 F.2d at 928. The complaint alleged that the directors disseminated false and misleading proxy statements, violating Section 14(a), by failing to disclose criminal activity and other misconduct of corporate employees. *Id.* at 929. According to the complaint, the directors deliberately omitted information about their alleged misconduct from proxy materials, and, had they disclosed the true facts to the shareholders, "they never would have voted for the [directors'] re-election . . . ." *Id.* at 930. The shareholder sought damages and an order invalidating the directors' re-elections. *Id.*

The district court dismissed the claim for damages because the complaint, even when read in plaintiff's favor, failed to allege "transactional causation." *Id.* at 931. It concluded that "the causal connection between the misleading proxy statements and the alleged misconduct was too attenuated to state a claim for damages under Section 14(a)." *Id.* The Third Circuit affirmed dismissal of the damages claim for the same reason. *Id.*

But the district court permitted the shareholder's equitable relief claim to proceed. *Id.* It concluded that the shareholder's assertion that the proxy materials were misleading was "sufficient to satisfy the transaction causation requirement with respect to the claim for equitable

relief arising from the [directors'] re-election, as [plaintiff] was attacking the elections themselves rather than the underlying transactions."[5] *Id.*

Invoking the *General Electric* ruling, plaintiff claims that he too seeks equitable relief. Doc. 60 at 51. Thus, he reasons, he satisfies the essential link requirement for the same reason the *General Electric* plaintiff did. And plaintiff is correct about the premise of his argument: his Amended Complaint appears to request injunctive relief.[6] *See* Doc. 50 at 135. So far so good.

But what's missing from the Amended Complaint is a request for an injunction invalidating the directors' re-election. The three cases cited by plaintiff illustrate why this omission matters so much.

First, plaintiff cites *Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650 (2d Cir. 1979) as support for his position that he has pleaded the essential link requirement adequately. And indeed, *Weisberg* reversed a decision granting a motion to dismiss because it failed to satisfy the transaction causation requirement. The defendants urged the Second Circuit to affirm the district court, asserting that "where the transaction authorized by the allegedly false or misleading proxy materials is the election of directors, previous improper corporate payments . . . are not approved by shareholders voting for directors, and thus are not caused by proxy statements." *Weisberg*, 609 F.2d at 654. The problem with this reasoning, the Second Circuit held, was that it "misconstrue[d] plaintiff's claim." *Id.* The Circuit noted that the transaction challenged by the

---

[5]     On appeal, the Third Circuit held that the ruling on the equitable claims was moot. The terms of the directors at issue on the re-election claims had expired. To grant equitable relief based on the directors' re-elections would "do[ ] the impossible: enjoining the directors from serving expired terms." *Gen. Elec. Co.*, 980 F.2d at 934.

[6]     The Amended Complaint demands a judgment "directing YRC and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws . . . ." Doc. 50 at 135 (Am. Compl. ¶ 508(d)). Though not the most explicit request for an injunction, the court, consistent with the governing standard, construes this as a request to seek an injunction.

complaint was "the election of the directors" and the Circuit had "no doubt that the proxy solicitation itself . . . was an essential link in the accomplishment of that transaction . . . ." *Id.* (internal quotation marks omitted) (first ellipses in original).  So, the Second Circuit held that plaintiff had satisfied the transaction causation element and reversed the order dismissing the case.

But the same cannot be said about the Amended Complaint in this case.  It never seeks an order or injunction invalidating the directors' re-election.  The closest it comes is a request for an order permitting YRC's shareholders to nominate "at least five candidates for election to the Board."  Doc. 50 at 136 (Am. Compl. ¶ 508(d)(2)).  But this request for relief is forward looking and, even when viewed in the light most favorable to plaintiff, it doesn't ask the court to invalidate the directors' re-election influenced by the allegedly false or misleading statements and omissions.

Plaintiff's second case—*Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980)—is similar. There, the Second Circuit held it couldn't reject plaintiff's Section 14(a) claim on the pleadings for the same reason as in *Weisberg*.  615 F.2d at 65–66.  Plaintiff sufficiently pleaded the causation requirement because "the injuries of which plaintiff complains in these claims are the elections themselves:  he seeks to have the elections overturned on account of alleged nondisclosure of certain directors' remuneration."  *Id.* at 65.

The same is true of plaintiff's third case—*Leff v. CIP Corp.*, 540 F. Supp. 857 (S.D. Ohio 1982).  There, the district court denied a motion to dismiss attacking a Section 14(a) claim.  540 F. Supp. at 869–70.  Plaintiffs sufficiently had alleged transactional causation because "[t]he harm the plaintiffs seek to remedy—the election of the four defendant directors—resulted from,

plaintiffs contend, the proxy solicitations of defendants which allegedly violated [Section] 14(a)." *Id.* at 866.

In sum, plaintiff cannot survive a Rule 12(b)(6) motion challenging essential link requirement with the generalized assertion that injury would not have occurred absent the directors' re-election under a misleading proxy statement.  Nor can plaintiff rely on his request for injunctive relief under the *General Electric* holding; his Amended Complaint never asks the court to invalidate the directors' election.  These conclusions mean plaintiff has failed to plead facts that, if true, would satisfy the essential link requirement.[7]

### b. Proxy Solicitation of Advisory Votes Fails to Provide an Essential Link.

The Amended Complaint next alleges that the alleged misrepresentations and omissions in the proxy statements were material to plaintiff's voting on executive compensation.  Doc. 50 at 130–31 (Am. Compl. ¶ 482).  Defendants assert that these votes merely were advisory votes.  Doc. 53 at 51.  The court agrees with defendants.  The court has taken judicial notice of Exhibits 4 and 5, copies of YRC's 2017 and 2018 proxy statements filed with the SEC.  Doc. 41 at 3 (Ashton Decl. ¶ 4.e.–f.).  YRC's 2017 and 2018 proxy statements call for an advisory vote on compensation for its executive officers.  Doc. 41-4 at 4; Doc. 41-5 at 4.  Also, the 2017 proxy statement calls for an advisory vote to recommend the frequency of the stockholder vote to approve compensation for executive officers.  Doc. 41-5 at 4.

Defendants assert that advisory votes cannot provide an "essential link" to a corporate action because no shareholder ratification is required.  Doc. 53 at 51.  Plaintiff's Opposition

---

[7]     Plaintiff's last citation on this issue relies on *S.E.C. v. Black*, No. 04 C 7377, 2008 WL 4394891 (N.D. Ill. Sept. 24, 2008).  But the plaintiff in this enforcement action was the SEC.  And, defendant conceded that the agency's reliance on a directors election satisfied the essential link requirement, so the court never analyzed the issue.  *Id.* at 13.

never addresses this argument, and with good reason. A plaintiff "cannot allege an essential link between the alleged omissions and any damages resulting from [an advisory vote]." *Advanced Advisors G. P. v. Berman*, No. LA CV14-01420 JAK (SSX), 2014 WL 12772264, at *14 (C.D. Cal. Sept. 16, 2014); *see also Swanson v. Weil*, No. 11-cv-02142-WYD-KLM, 2012 WL 4442795, at *9 n.7 (D. Colo. Sept. 26, 2012) (holding that advisory vote cannot provide the "essential link" causing harm to shareholder because advisory vote doesn't authorize corporate action). To meet the essential link requirement, the proxy statement must solicit "votes legally required to authorize the action proposed." *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991). Since the advisory votes on executive compensation authorized no corporate action, plaintiff cannot rely on this vote to satisfy Section 14(a)'s "essential link" requirement. Plaintiff has failed to show how these advisory votes could satisfy the transaction causation requirement.

### c. Ratification of YRC's Independent Auditor is Unrelated to the Harm Alleged.

Finally, the 2017 and 2018 proxy statements both called for a shareholder vote on the appointment of an independent auditor. *See* Doc. 41-4 at 4; Doc. 41-5 at 4. Defendants assert that the Amended Complaint never alleges that "ratification of YRC's independent auditor had any bearing whatsoever on the harm or misconduct alleged." Doc. 53 at 51–52. And again, they are correct. Plaintiff's Opposition never responds to defendants' argument. The Amended Complaint alleges that the misrepresentations and omissions were material to plaintiff in voting on matters set for shareholder votes in the proxy statements, including ratification of an independent auditor. Doc. 50 at 130–31 (Am. Compl. ¶ 482). But the Amended Complaint never alleges any link existed between shareholders' ratification of the independent auditor and the Individual Defendants' authorization of the alleged Reweighing Misconduct and subsequent

disclosure issues. Plaintiff has failed to allege transaction causation between the shareholder vote on the independent auditor and the misconduct alleged. This makes dismissal appropriate under Rule 12(b)(6). *See Lone Star Steakhouse*, 148 F. Supp. 2d at 1151 (holding that to state a claim under Section 14(a), plaintiff must allege that the proxy was an "essential link in the accomplishment of the transaction giving rise to the litigation") (citation and internal quotation marks omitted).

### 3.   Conclusion

Plaintiff has failed to state a claim under Section 14(a) for which the court can grant relief. The Amended Complaint relies on YRC's 2014 through 2018 proxy statements, alleging essentially that the proxy statements failed to disclose the Reweighing Misconduct and its consequences. Doc. 50 at 130 (Am. Compl. ¶ 479). But the three-year limitations period bars plaintiff's reliance on the 2014 through 2016 proxy statements. And, for the reasons explained above, plaintiff has failed to state a claim under Section 14(a) based on the 2017 and 2018 proxy statements. The court thus dismisses with prejudice plaintiff's Section 14(a) claim, his only federal law claim. *See Grand Design Golf, Ltd. v. Glinstra*, 112 F. Supp. 2d 1098, 1099 (D. Kan. June 15, 2000) (dismissing plaintiff's federal law claims with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6)).

### B.  Supplemental Jurisdiction

Dismissing plaintiff's sole federal law claim leaves his three state law claims. Under 28 U.S.C. § 1367(c), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction in this circumstance is one committed to a district court's sound discretion. *Exum v. U.S. Olympic Comm.*, 389 F.3d

1130, 1138–39 (10th Cir. 2004). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

But "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *see also Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (holding that where pretrial proceedings and discovery have not commenced in earnest, "considerations of judicial economy, convenience, and fairness do not favor retaining jurisdiction" (citations and internal quotation marks omitted)). Also, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the court has dismissed the sole claim against defendants which it had original jurisdiction to decide. Only plaintiff's state law claims remain. A forum selection clause governs these state law claims, requiring plaintiff to bring them in the Delaware Court of Chancery. Doc. 53 at 22. Plaintiff asserts it would compromise judicial economy and comity if the court declined supplemental jurisdiction over his state law claims. Doc. 60 at 24. Plaintiff asserts that if the court declines supplemental jurisdiction over the state law claims, the Delaware Court of Chancery would have to repeat some of the court's work here because the state law claims have similar issues of fact and law as plaintiff's Section 14(a) claim. *Id.* at 25. And,

plaintiff asserts, trial would be burdensome in Delaware because most witnesses are located in Kansas. *Id.* at 27.

Plaintiff relies on *Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74 (10th Cir. 2011) for support. Under *Henderson*, the district court may exercise its discretion to retain jurisdiction over state law claims, even if it has dismissed the sole federal law claim. *Henderson*, 412 F. App'x at 78–79. In *Henderson*, the district court retained jurisdiction over the state law claims, despite dismissing the federal law claim, because significant pre-trial activity already had occurred. *Id.* at 79. The parties had filed a discovery plan, prepared and served disclosure statements, attended a scheduling conference, exchanged written discovery, taken multiple depositions, participated in a status conference, designated expert witnesses, and set a trial date. *Id.* Plaintiff's Opposition asserts that here, as in *Henderson*, the court should retain jurisdiction over the state law claims in the interest of judicial economy. Doc. 60 at 26.

Plaintiff's argument is unavailing. The court has dismissed plaintiff's sole federal claim at the motion to dismiss stage. The case has not reached the stage of litigation that the parties had reached in *Henderson*. No discovery or other pretrial proceedings have taken place yet. And, contrary to plaintiff's assertion, this Memorandum and Order never addresses plaintiff's state law claims. So if plaintiff elects to file his state law claims in the Delaware Court of Chancery, that court will not repeat or contradict any work this court has performed to consider plaintiff's state law claims. Plaintiff has provided no compelling reason that the court should ignore the forum selection clause governing the state law claims and retain jurisdiction over them. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (holding that a valid forum selection clause should be given controlling weight in all but the most exceptional circumstances). Exercising its discretion, the court declines to exercise

supplemental jurisdiction over plaintiff's state law claims. The court dismisses, without prejudice, plaintiff's state law claims. *See Grand Design Golf, Ltd.*, 112 F. Supp. 2d at 1098 (declining to exercise supplemental jurisdiction over plaintiff's state law claims and dismissing those claims without prejudice).

## IV. Motions to Intervene (Docs. 67 & 70)

Shareholder Ameesh Bhandari has filed a Motion to Intervene (Doc. 67). Mr. Bhandari seeks to intervene in this action because, he asserts, plaintiff cannot adequately represent his interests for two reasons: (1) plaintiff has failed "to gather books and records documentation from YRC as is mandated by sound stockholder practice and strongly encouraged by Del[a]ware law," and (2) plaintiff has failed to file suit in the forum selected in YRC's bylaws. Doc. 68 at 7. Mr. Bhandari asserts that he is gathering information from YRC, and if a review of those materials presents the need for a derivative lawsuit, he will file suit in the Delaware Court of Chancery, consistent with YRC's bylaws. *Id.* He has filed this motion because, if defendants prevail on a dismissal motion challenging demand futility, he may be collaterally estopped from bringing his claims in the Delaware Court of Chancery. *Id.* at 17.

Shareholders Shawn Miller and Jeremy Baldwin also have filed a Motion to Intervene (Doc. 70). They express the same concern as Mr. Bhandari. Mr. Miller and Mr. Baldwin assert that plaintiff's "election to proceed without the books and records necessary to plead demand futility under Delaware's challenging substantive standards, and with the particularity required by Rule 23.1, has jeopardized the claims." Doc. 71 at 7. They seek to intervene in this case for the purpose of staying the case until the Delaware Court of Chancery decides the demand futility question based on their forthcoming complaint, as informed by YRC's books and records. *Id.* at 9–10. Alternatively, if the court grants dismissal for failure to plead demand futility, Mr. Miller

and Mr. Baldwin request that the court clarify that dismissal is with prejudice to plaintiff only, not for other YRC shareholders.  Doc. 71 at 10.

Plaintiff has filed a Memorandum in Opposition (Doc. 73) to both motions to intervene and defendants also have filed a Response (Doc. 74) to both motions.

Defendants' Motion to Dismiss (Doc. 52) seeks dismissal of plaintiff's Amended Complaint based on demand futility under Fed. R. Civ. P. 23.1.  Doc. 53 at 28.  Defendants' motion asserts that the court should dismiss plaintiff's Amended Complaint because plaintiff has failed to plead sufficiently that pre-suit demand on YRC's Board of Directors would have been futile.  *Id.*  But the court did not find it necessary to rule this issue.  And it does not grant defendants' motion on this basis.  Instead, the court dismisses plaintiff's Section 14(a) claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  And it declines to exercise supplemental jurisdiction over plaintiff's state law claims.  This outcome obviates the putative intervenors' concern about demand futility.  The court thus denies as moot both Motions to Intervene (Doc. 67 & Doc. 70).

## V.    Conclusion

For reasons explained above, the court grants both parties' Motions for Judicial Notice (Doc. 39 & Doc. 57).  The court also grants defendants' Motion to Dismiss (Doc. 52) for reasons explained in full in this Order.  The court declines to exercise supplemental jurisdiction over plaintiff's state law claims.  YRC's Motion to Stay (Doc. 37) and plaintiff's Cross-Motion to Stay (Doc. 49) are denied as moot.  Finally, Mr. Bhandari's Motion to Intervene (Doc. 67) and Mr. Miller and Mr. Baldwin's Motion to Intervene (Doc. 70) are denied as moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' Motions for Judicial Notice (Doc. 39 & Doc. 57) are granted.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Dismiss (Doc. 52) is granted. Plaintiff's Section 14(a) claim is dismissed with prejudice. The court declines to exercise supplemental jurisdiction over his state law claims, which are dismissed without prejudice.

**IT IS FURTHER ORDERED THAT** YRC's Motion to Stay (Doc. 37) and plaintiff's Cross-Motion to Stay (Doc. 49) are denied as moot.

**IT IS FURTHER ORDERED THAT** Mr. Bhandari's Motion to Intervene (Doc. 67) and Mr. Miller and Mr. Baldwin's Motion to Intervene (Doc. 70) are denied as moot.

**IT IS SO ORDERED.**

**Dated this 30th day of March, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
